THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FRANK PAUL REYOS,<br><br>Petitioner,<br><br>v.<br><br>UTAH STATE PRISON,[1]<br><br>Respondent. | MEMORANDUM DECISION<br>AND ORDER DENYING<br>HABEAS CORPUS PETITION<br><br>Case No. 2:19-CV-517-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

This habeas action involves a *pro se* petitioner, inmate Frank Paul Reyos' attack on his state conviction pursuant to 28 U.S.C. § 2254.[2]

Having carefully considered the Petition, the State's response, and Petitioner's Reply, the court concludes that Petitioner has procedurally defaulted all but two of his grounds for relief and is not entitled to relief on the two remaining grounds. The petition is therefore denied.

I.

Petitioner was sentenced "to life in prison without the possibility of parole for . . . aggravated murder and a consecutive term of one to fifteen years in prison for possession of a dangerous weapon." *State v. Reyos*, 2017 UT App 132, ¶ 10. On direct appeal, he only pursued two issues: "whether the trial court erred in admitting evidence of [a witness's] police interview

---

[1] Petitioner must clearly name his custodian (warden or ultimate supervisor of imprisonment facility) as the respondent. R. 2, Rs. Governing § 2254 Cases in the U.S. Dist. Cts. The record indicates that he is being held at the Central Utah Correctional Facility, *see e.g.*, Dkt. No. 20-1, where Devin Blood is warden. Despite this technical defect in the petition, the court will thus treat Warden Blood as the respondent.

[2] Because Petitioner is *pro se*, his pleadings must be construed liberally. *Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, this requirement does not obligate the Court to form arguments for him or excuse compliance with procedural rules. *Id*.

in violation of [Petitioner's] constitutional right to confrontation and whether the applicable sentencing scheme [was] constitutional." *Id.* ¶ 11. Analyzing these issues on the merits, the Utah Court of Appeals affirmed Petitioner's convictions. *Id.* ¶ 49. The Utah Supreme Court then denied Petitioner's certiorari petition. *State v. Reyos*, 406 P.3d 249 (Utah 2017) (table).

Petitioner's state post-conviction petition also unsuccessfully attacked his conviction on grounds of ineffective assistance of counsel and prosecutorial misconduct. *See* Dkt. No. 9-6, at 2–3. He did not appeal the denial of his state petition.

## II.

In his federal petition, Petitioner raises the following issues. First, whether his Confrontation Clause rights were violated when evidence of a witness's police interview was admitted, though the witness was "unavailable" for cross examination. *See* Dkt. No. 1 at 5. Second, whether, because witness Natasha Alvarado's testimony was "inherently unreliable," there was insufficient evidence to convict.[3] *Id.* at 7. Third, whether he received unconstitutionally ineffective assistance of trial and appellate counsel.[4] *Id.* at 8. And fourth, whether the statutory scheme under which Petitioner was sentenced was valid. *Id.* at 10. The second and third issues

---

[3] The Utah Court of Appeals stated that "Reyos also challenged the sufficiency of the evidence to support his conviction of aggravated murder but conceded this issue at oral argument." *Reyos*, 2017 UT App 132 ¶ 11, n.5. This means he did not pursue this issue at each level of state-court review.

[4] In his petition, Petitioner tacks on to the end of this challenge, "and prosecutorial misconduct." Dkt. No. 1 at 8. He specifies that "prosecutorial misconduct occurred when prosecutor elicited false and coerced testimony from witness Natasha Alvarado." *Id.* He had apparently raised prosecutorial misconduct in his unsuccessful state post-conviction petition that he did not appeal. Thus, the procedural-default analysis in the next section applies to bar this issue, too.

2

raised in the Petition were not raised before the Utah Court of Appeals or the Utah Supreme Court and are therefore procedurally defaulted under the below analysis.[5]

### III.

The United States Supreme Court has declared that when a petitioner has "'failed to exhaust his state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).[6] Under Utah's habeas statute, the Post-Conviction

---

[5] Also, alleged violations of the Utah Constitution or state statutes are not properly raised in a federal habeas petition. *See* 28 U.S.C. § 2254 (authorizing relief only for those in custody "in violation of the Constitution or laws or treaties of the United States"); *see also Locklear v. Hultine*, 528 F. Supp. 982, 986 (D. Kan. 1981) ("It is well settled that the interpretation of state statutes is purely within the domain of state courts, and is beyond the reach of a federal court in a habeas corpus proceeding, unless it is clearly shown that a state's judicial interpretation violates fundamental rights guaranteed by the constitution.") (citing *United States ex rel. Savino v. Flood*, 482 F. Supp. 228, 233 (E.D.N.Y. 1979) (citing *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977))). Examples of this are Petitioner's arguments that the police statement was admitted into evidence, "contrary to the Utah Rules of Evidence Rule 804," Dkt. No. 1 at 5, and that he was sentenced under the wrong section of Utah code. *Id.* at 10.

Also, any issues raised for the first time in Petitioner's Reply to the State's response, are considered waived and will not be addressed here. *See Adler v. Wal-Mart Stores*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). For instance, Petitioner appears to argue for the first time in his Reply that although his "co-defendant" Montes had been "disqualified from testifying," "a detective" was allowed "to testify to a non-testifying co-defendant's interview." Dkt. No. 19 at 6. Petitioner further argues for the first time in his Reply that Witness Taylor's *Miranda* rights were violated. Not only is argument waived, Petitioner also lacks standing to raise it. *See Sutton v. Doe*, 736 F. App'x 212, 213 (10th Cir. 2018) (unpublished) ("To establish standing, a plaintiff must allege . . . 'an injury to himself that is distinct and palpable.'" (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990))).

[6]"[T]he [exhaustion] doctrine requires state prisoners to give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See Thacker v. Workman*, 678 F.3d 820, 839 (10th Cir. 2012) (original brackets and internal quotation marks omitted)).

Remedies Act:

> A person is not eligible for relief . . . upon any ground that:
> (a) may still be raised on direct appeal or by a post-trial motion;
> (b) was raised or addressed at trial or on appeal;
> (c) could have been but was not raised at trial or on appeal;
> (d) was raised or addressed in any previous request for post-conviction relief or could have been, but was not, raised in a previous request for post-conviction relief; or
> (e) is barred by the [one-year] limitation period established in Section 78B-9-107.

Utah Code Ann. § 78B-9-106(1).

The second and third issues that Petitioner raises here—insufficient evidence to convict and ineffective assistance of counsel, respectively—were raised or could have been raised either at trial, on appeal, or in a state post-conviction petition (PCP). Thus, under Utah law, Petitioner may not raise those arguments in future PCPs, and the state courts would determine them to be procedurally barred.

Petitioner apparently asserts cause and prejudice as an exception that rescues him from the effects of his procedural defaults. Specifically, he suggests that ineffective assistance of counsel during his state proceedings supplies cause and prejudice because his "[a]ppellate counsel determined not to raise [issues two and three] due to insufficient funding and restricted access to documentation." Dkt. No. 1 at 9.

"[T]o satisfy the 'cause' standard, [a] Petitioner must show that 'some objective factor external to the defense' impeded his compliance with Utah's procedural rules." *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir. 1992) (citations omitted). To demonstrate prejudice, "'[t]he habeas petitioner must show not merely that . . . errors . . . created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage.'" *Butler v. Kansas*, No. 02-3211, 2002 WL 31888316, at *3 (10th Cir. Dec. 30, 2002) (unpublished) (alteration in original) (quoting

4

*Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original)).

"Attorney error that constitutes ineffective assistance of counsel is cause." *Coleman v. Thompson*, 501 U.S. 722, 754 (1991); *see also id*. (explaining that such "error must be seen as an external factor").

Here, the problem for Petitioner is that, on state post-conviction review, the trial court explicitly analyzed his ineffective assistance of counsel claim and did not find his counsel to be ineffective under the *Strickland* standard. *See* Dkt. No. 9-6 at 5–11. Petitioner did not appeal the trial court's decision. And an ineffective-assistance-of-counsel claim that has been rejected cannot establish cause to overcome procedural default. *See Thompson v. Benzon*, No. 2:18-CV-320-DAK, 2021 U.S. Dist. LEXIS 170485, at *13–14 (D. Utah Sept. 7, 2021). Further, any other ineffective-assistance-of-counsel claim that Petitioner thinks may support a cause argument must itself be properly exhausted in state court before it can be validly used as cause; however, any such claims are now foreclosed in state court. *See id.* at *14.

In sum, the court concludes that Petitioner's second and third grounds for federal post-conviction relief are procedurally defaulted, and that the procedural-default exceptions he advances are invalid. Habeas relief is thus denied on these issues.

### IV.

The statute governing this habeas petition provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . .

28 U.S.C. § 2254(d)(1).

5

The inquiry focuses on whether the Utah Court of Appeals' rejection of Petitioner's claims "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).[7] This is a "'highly deferential standard.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (citations omitted); *see also Littlejohn v. Trammell*, 704 F.3d 817, 824 (10th Cir. 2013). It is "'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43–44 (2011) (citations omitted).

Under *Carey v. Musladin*, 549 U.S. 70 (2006), the first step of the inquiry is determining whether any clearly established federal law exists that is relevant to a Petitioner's claims. *See House v. Hatch*, 527 F.3d 1010, 1017–18 (10th Cir. 2008); *see also Littlejohn*, 704 F.3d at 825. Only after answering yes to that "threshold question" may the court go on to "ask whether the state court decision is either contrary to or an unreasonable application of such law." *Id.* at 1018. As the Tenth Circuit has explained:

> [C]learly established [federal] law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*Id.* at 1016.

Further, "in ascertaining the contours of clearly established law, [the court] must look to the '*holdings* as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the

---

[7]The court looks to the court of appeals' decision on direct appeal because it is the last reasoned state-court opinion on the claims at issue. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

6

relevant state-court decision." *Littlejohn*, 704 F.3d at 825 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004) (emphasis added) (citations omitted)). And, in deciding whether relevant clearly established federal law exists, this court is not restricted by the state court's analysis. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("[F]ederal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation."); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) ("[A] state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (citation omitted).

If this threshold is satisfied, this court may grant habeas relief only when the state court has "unreasonably applied the governing legal principle to the facts of the petitioner's case." *Walker v. Gibson*, 228 F.3d 1217, 1225 (10th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "'[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington*, 131 S. Ct. at 785 (emphasis in original) (quoting *Williams*, 529 U.S. at 410). Rather, to meet this standard, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

## V.

The exhausted claims here are Petitioner's Confrontation Clause claim and his challenge to the sentencing scheme under which he was sentenced.

After reviewing the record and the applicable law, the court concludes that the Utah Court of Appeals analyzed these claims using the correct governing legal principles. The Utah Court of Appeals analyzed the Confrontation Clause under the framework set out in "the

7

landmark case," *Crawford v. Washington*, 541 U.S. 36 (2004), and its progeny. *Reyos*, 2017 UT App 132 ¶ 15. And it analyzed the constitutionality of the challenged sentencing framework under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny. *Id.* ¶ 32. All that remains, then, is to determine whether the state court's application of the principles set forth in these controlling precedents was reasonable.

**A.**

Petitioner frames his Confrontation Clause claim as follows: "[The] [t]rial court erred in allowing evidence of a police interview with a witness not available for trial, in violation of petitioner's right to cross-examine." Dkt. No. 1 at 5. He specifies that, "[w]hile witness Trenton Taylor appeared to recollect events at the time of the original police interrogation . . . he claimed to have no memory of those same events during witness testimony, rendering any cross examination of the statements provided in his original police statement testimony impossible." *Id.*

In evaluating this claim, the Utah Court of Appeals reasoned as follows:

> Reyos contends the admission of John's out-of-court statements violated his Sixth Amendment right of confrontation because John had "absolutely no memory" of his interview with police. In Reyos's view, John's "amnesia" made him unavailable because defense counsel could not meaningfully examine him about his out-of-court statements. We disagree.
>
> The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court discussed the contours of the Confrontation Clause in the landmark case *Crawford v. Washington*, 541 U.S. 36 (2004). . . .
>
> The *Crawford* court . . . articulated a new test, stating that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at

8

68. We emphasize that the *Crawford* test is triggered by testimonial statements only. *See id.* ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford States flexibility in their development of hearsay law . . . as would an approach that exempted such statements from Confrontation Clause scrutiny altogether."). Although the Court did not define "testimonial," it stressed that, at a minimum, the term applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*
. . . .

Unavailability under the Confrontation Clause is narrow and literal. A witness is unavailable if he does not testify but is available if he does. *See Crawford*, 541 U.S. at 53–54, 59 n.9 (stating that "the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination," and that "[t]he Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it" (emphases added)); *see also California v. Green*, 399 U.S. 149, 161 (1970) ("[W]e note that none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial."). And where a witness is available, his testimonial statements are admissible and do not violate the Confrontation Clause. *Crawford*, 541 U.S. at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." (emphasis added)).
. . . .

Reyos relies on cases analyzing unavailability under the Utah and Federal Rules of Evidence to support his contention that John was unavailable for purposes of the Confrontation Clause. In addition, Reyos makes the bald assertion that, because John claimed no memory of speaking with him about the murder or making a statement to the police, he "was deprived of his right of the 'face-to-face' confrontation." But the cases he cites do not support his argument, and in any event, the Confrontation Clause is not triggered where, as here, "the declarant is present at trial to defend or explain" his statement. *Crawford*, 541 U.S. at 59 n.9; *Green*, 399 U.S. at 162 ("For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of

9

> his out-of-court statements does not create a confrontation problem.").
>
> Reyos further asserts, "there was no 'meaningful cross-examination' because the defense was unable to elicit any testimony regarding the surrounding circumstances or the actual event, to test whether the witness's statement was factually accurate." But the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens*, 484 U.S. 554, 559 (1988) (citation and internal quotation marks omitted). And where a witness testifies that he cannot recall making a prior statement or the events surrounding it, "[i]t is sufficient that the defendant has the opportunity to bring out such matters as the witness'[s] bias, his lack of care and attentiveness, his poor eyesight, and even . . . the very fact that he has a bad memory." *Id.* "The weapons available to impugn the witness'[s] statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee. They are, however, realistic weapons . . . ." *Id.* at 560.
>
> Indeed, Reyos, through counsel, could have inquired about whether John was under the influence of drugs or alcohol at the time he spoke with Reyos and the police, which, if true, could have undermined the veracity of John's statements to the police and provided an explanation for John's inability to remember them. Reyos did not pursue such questioning, but it is sufficient that he had the opportunity to do so. *See id.* at 559–60. Reyos did, however, ask John whether he remembered speaking with him or the police, and the jury was able to observe John's demeanor and assess his truthfulness.
>   . . . .
>
> In sum, we conclude John was available for Confrontation Clause purposes and the trial court therefore properly admitted his out-of-court statements.

*Reyos*, ¶¶ 14–24, 26 (footnotes omitted).

Petitioner has not identified, and the court has not found any on-point Supreme Court precedent that conflicts with the state court of appeals' analysis. In addition, having analyzed Petitioner's Confrontation Clause claim under *Crawford* and its Supreme Court progeny, the

10

court cannot say that Utah Court of Appeals' analysis was an unreasonable application of any of these precedents.

**B.**

Petitioner frames his challenge to Utah's sentencing scheme as follows:

> Petitioner was sentenced under Utah code 76-3-207.7 by the judge, rather than under 76-3-207 by a jury, which is required by law for non-capital defendants in an aggravated murder case. His life without parole sentence was thus arbitrarily imposed by the court in noncompliance with statute, depriving Petitioner the right to a jury determination of sentencing.

Dkt. No. 1 at 10. This is the totality of Petitioner's argument.

To the extent this argument is based on state law, it is not cognizable on federal habeas corpus review, as already explained. *See supra* n.5. The court will thus assume that Petitioner intends to raise the federal challenge he exhausted on direct appeal.

In rejecting this challenge, the Utah Court of Appeals reasoned as follows:

> Reyos contends Utah's aggravated murder sentencing scheme violates the Due Process Clause of the United States Constitution . . . because it allows the sentencing court rather than the jury to impose a sentence of life in prison without parole. Reyos argues that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), the sentencing scheme is unconstitutional.
>
> In *Apprendi*, the Supreme Court explained that the right to due process under the Fifth Amendment and the right to an impartial jury under the Sixth Amendment, "[t]aken together, . . . indisputably entitle a criminal defendant to a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." 530 U.S. at 476–77 (second alteration in original) (citation and internal quotation marks omitted). In light of these rights, the Court held unconstitutional a New Jersey statute that authorized a sentencing court to impose a sentence beyond the statutory maximum if the judge determined, by a preponderance of the evidence, the defendant committed a hate crime. *Id.* at 468–69, 497. The Court stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a

11

crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Confronting a similar situation in *Alleyne*, the Court held that any fact that would "increase the mandatory minimum sentence . . . must be submitted to the jury and found beyond a reasonable doubt." 133 S. Ct. at 2158.

In Reyos's view, section 207.7 runs afoul of *Apprendi* and *Alleyne* because, as he claims, it authorizes the sentencing court to "increase" the mandatory minimum sentence by imposing a sentence of life in prison without parole rather than an indeterminate sentence of twenty-five years to life, and such an increase "must be based upon a jury determination of the facts supporting the increase." We are unpersuaded by this argument.

In *State v. Houston*, 2015 UT 36, 353 P.3d 55, our supreme court reviewed a similar *Apprendi* challenge. *Id.* ¶¶ 30–32. There, the defendant argued section 207 was unconstitutional under *Apprendi*. *Id.* The court noted that, unlike the statute at issue in *Apprendi*, section 207 does not require or authorize the sentencing court "to make factual findings that increase an offender's sentence." *Id.* ¶ 32. Section 207.7 similarly does not require or authorize the sentencing court to make a factual finding that would increase the statutory maximum sentence. See Utah Code Ann. § 76-3-207.7. Notwithstanding this precedent, Reyos argues *Alleyne*'s extension of *Apprendi*'s rule to prohibit imposing a sentence increasing the mandatory minimum sentence renders section 207.7 unconstitutional. But, like section 207, section 207.7 does not require or authorize the sentencing court to increase the mandatory minimum sentence—in this case, not less than twenty-five years in prison. *See id.* Rather, section 207.7 provides the court with two alternative sentences—life without parole or twenty-five years to life—and identifies no factual finding that is pertinent to the court's decision between the two. *See id.*

In any event, the Supreme Court noted in *Apprendi*, "We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion . . . in imposing a judgment within the range prescribed by statute." 530 U.S. at 481. This is precisely what the sentencing court did. We conclude *Apprendi* and *Alleyne* do not apply, and therefore there is no violation under the United States Constitution.

*Reyos*, 2017 UT App 132, ¶¶ 27–36.

12

Again, Petitioner has not identified, and the court has not found any on-point Supreme Court precedent that conflicts with the state court of appeals' analysis. And, having analyzed Petitioner's Confrontation Clause claim under *Apprendi* and its Supreme Court progeny, the court cannot say that Utah Court of Appeals' analysis was an unreasonable application of any of these precedents.

## CONCLUSION

Petitioner's claims are procedurally defaulted or do not clear the hurdle required by the federal habeas standard of review.

**IT IS ORDERED** that:

**(1)** The petition for writ of habeas corpus is **DENIED** and the action **DISMISSED WITH PREJUDICE**.

**(2)** A certificate of appealability is **DENIED**.

**(3)** Petitioner's motion for the court to reconsider its denial of appointed counsel and discovery is **DENIED**. Dkt Nos. 12, 18.

DATED this 28th day of March, 2022.
BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge